The defendant purchased certain negroes at public auction, which were sold by the complainant as the pro-pertyofhis testator, M’Kearny. There were at the time executions in the sheriff’s office against M’Kearny, which were unsatisfied, and on which there had been returns of nulla bona. ' The defendant insists that the purchase money for the negroes ought to be applied to the discharge of these executions, and the complainant Contends that the negroes are not bound by the execur *546 tions, because they had been acquired by his testator afi *er ^!C returns aforesaid were made by the sheriff. The question then arising out of this case is(whether the lies! an execu^on *s confined to such goods only as belong to the debtor at the time when the writ is lodged, or whether it extends to goods acquired by him afterwards^ This question has never been settled by our Courts,* nor is there any light on the subject to be derived from precedents; it must therefore be decided upon general 'principles. Two cases were quoted on the part of the complainant, but neither of them determine the point before us. In the case from 10th Yin. tit. Ex. it is said, « If one recovers in debt lie shall not have execution but of those goods which the defendant had at the day of the execution made.” This only means (as is evident from the whole case) that an execution shall not have a retrospective lien, on any goods which the debtor may have disposed of before the execution was lodged. In 2 N. York T. R. 243, it was held that an execution could not be levied on property acquired by the debtor after the return day, because its operation was then at an end. But the Court proceeds to say that such property may be come at, by procuring a return of the execution and issuing an alias. This is saying nothing more than that the active quality only of the execution ceased at the return day, and that a renewal of it was necessary to give it operation as an authority to sell; the binding quality of an execution is not there determined on ; but whatever may be the construction of that or any other Court upon this point is immaterial here ; for the construction of the Constitutional Court upon it in the case of Snipes v. Osborn (which has become a rule of property on the subject) ought to govern in the present case. In that case it was determined that the binding effect of an execution continued, notwithstanding its active power was *547 pot kept alive by renewals. The lien therefore of an execution on goods is under the authority of that decision of the same nature as that of a judgment with rc-spect to lands. What then is the lien of a judgment ? ° It is a continuing charge which operates until it is satis-tied upon all the lands of the debtor, whether belonging to him at the time of the judgment being entered up or acquired afterwards. This effect of a judgment has not heretofore been questioned, and is supported by the construction of the English law as far as it is applicable to the subject. Under a recognizance on the statute merchant, or in the nature of the statute staple, « If the conusor purchase lands after he has bound himself, such, lands are subject to execution.” 2 Bac. 698. This remedy against lands, which is more full than any other permitted by the law of England, is most analogous in principle to the remedy under our lien. The statute staple and the writ of extent (the execution proceeding from it) were originally devised for the security of merchants. So also a judgment and fi. fa. here against; lands which are derived from the stat. 5 Geo. 2, were gi-yen (as the preamble states) for the advancement of trade.
Upon principle then, a judgment, like a statute staple, should hind lands acquired by the debtor after the judgment has been entered up, and if so an execution, will have the same effect as to goods. But it was argued, how can the execution in the present case bind ne-groes which belonged to a stranger when the execution was lodged ? This would he a good objection if the lien of an execution was only a specific charge on the goods of a debtor. But if it is a general charge (which appears to me to be its true nature) then it may not only bind the existing property of the debtor, but may in construction of law, subject to its operation any other property which he may have afterwards. Every debt as soon as it is contracted, vests in the creditor a right to be paid out of any part of the debtor's estate f and while only a chose in action, it has an inchoate lien on all his property, whether acquired before or after the *548 contract. When sued therefore, and the right is con-sumiwated by a judgment and execution, the general lien °f both becomes perfect, and should continue to charge' onIy ^ie existing property of the debtor, but also to attach on all his future acquisitions. If indeed an execution becomes dormant it must be revived by a scire facias before it can have an active operation; but its binding quality, like that of the judgment, continues until it is satisfied, or until length of time furnishes sufficient ground for presuming satisfaction. This principle 'is expressly recognised by the 26th clause of the executor’s act, which although it forbids any preference to creditors is in an equal degree, yet declares that the executions which have been first lodged in the sheriff’s office shall be first paid, without requiring any renewals, and without any regard to the time when the property of the debtor was acquired. The rule prescribed by this act is in conformity with the legal maxim « qui prior est tempore potior est jure,” and ought to be the general rule on the subject. I am of opinion therefore that the decree of the Circuit Court in this case must be reversed.
Mr. Grimke, for appellants,
Mr, Lance, for respondent^-
(Signed,) Thomas Waties.
We concur in the above decree for the reasons given therein.
(Signed,) Henry Wh. Desaussure^
Theodore Gaiieakd,
WhiIiIam JDobein James.
The costs in the case áre to be divided,

 It was made before the Constitutional Court about nine years ago, in the case of Parker v&yAdminjstrator of Levacher, but the Judges (all being present,,) were equally divided upon it. No opinions however were publicly delivered, as the case went off on another ground,'